IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | NO. 9:19-CR-31 |
| | § | |
| JODY LEE BAKER | § | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE
JUDGE ON THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

Pending before the undersigned is a "Motion to Suppress Evidence" [Dkt. #27] filed by the Defendant, Jody Lee Baker ("Baker").[1] The United States filed a response to the Defendant's motion [Dkt. #27], and the undersigned heard testimony and oral argument on October 29, 2019. The undersigned finds that the search and seizure were lawful. Accordingly, the undersigned recommends denying Baker's Motion to Suppress Evidence.

### I.      RELEVANT FACTS

During the hearing on the instant motion held on October 29, 2019, Deputy Matthew Van Egmond ("Van Egmond") testified that he works as a deputy sheriff with the Houston County Sheriff's Office. Van Egmond is responsible for covering the cities of Grapeland, Kenard, Lovelady and the associated areas. Van Egmond has been with the Houston County Sheriff's Office for a year and a half, and his responsibilities include patrol of the roadways and the county roads. Van Egmond frequently collaborates with outside law enforcement agencies in his role as a deputy sheriff. Based on his location, a large focus of Van Egmond's work is narcotics-related crime.

---

[1] This motion is referred to the undersigned United States magistrate judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law. *United States v. Raddatz*, 447 U.S. 667, 681-84 (1980); *see also* 28 U.S.C. § 636(b)(1)(B) and Local Rule CR-59(a).

On September 17, 2018 at around 5:50 p.m., Van Egmond was on patrol by himself within the city limits of Grapeland when he observed a white Ford pickup truck pull into a Valero gas station and park. Van Egmond was familiar with the truck and he observed an individual he knew to be Mary Katrin Low ("Low") exit the vehicle. Based on his prior experience, and the warrant list he had consulted prior to his patrol that evening, he was aware that Low had an outstanding warrant for filing a false report. Van Egmond also knew that Low was heavily involved in narcotics activity. Van Egmond saw that the driver of the vehicle was wearing a red shirt, although he could not identify the driver. Relying on a previous experience involving the white Ford pickup truck, he was aware that the vehicle registration for the truck had expired in January of 2018. Based on that experience, Van Egmond conducted a "rolling 28" where he radioed to his dispatch who advised Van Egmond that the vehicle registration was expired, and confirmed Low's outstanding warrant.

Shortly thereafter, the white truck left the Valero gas station and Van Egmond followed. About a quarter of a mile from the intersection of Plumb and Sycamore streets, Van Egmond activated his turret lights to effectuate a traffic stop of the vehicle. Right after, the truck increased its speed from approximately 30 miles per hour to over 50. Van Egmond pursued the vehicle for about half a mile. As the truck fled from Van Egmond, the truck made a right on Church Street then a left on Augusta and finally pulled into a driveway of a home and came to a stop. Immediately, the doors of the vehicle opened, and the passengers got out. As the passengers exited the vehicle, Van Egmond recognized the driver as Jody Lee Baker ("Baker") from previous encounters. Van Egmond commanded Baker to stop moving, but Baker fled from Van Egmond on foot. Around this time, three other officers arrived. Van Egmond pursued Baker, while the other officers secured the passengers. Baker ran across a neighboring property and Van Egmond lost

2

sight of him. However, several neighbors pointed out where Baker went, and Van Egmond regained sight of Baker, who was then running back towards the truck. Van Egmond drew his taser and announced to Baker "stop running or I am going to drop you." Baker then tripped. Van Egmond proceeded to put restraints on Baker and arrested him.

After the arrest, Van Egmond returned Baker to the house and placed him in the back of his police vehicle. Shortly after Van Egmond placed Baker in the vehicle, Officer Roger Dickey ("Dickey") informed Van Egmond that a witness had seen Baker place an object in the wheel well of her tire when he was fleeing from Van Egmond. Van Egmond walked over to the witness's vehicle and inspected the wheel well. Van Egmond found a black eyeglass case which contained money in the amount of $133, pills, syringes, a substance Van Egmond knew to be methamphetamine, and a pipe used to smoke methamphetamine. Van Egmond then attempted to open the truck, but the truck was locked.

Van Egmond interviewed Baker, Low, and the third individual, James Watson ("Watson"). After reading each individual their *Miranda* rights, Van Egmond asked them if they knew the whereabouts of the key to the truck and who claimed the methamphetamine. None of the individuals knew where the key was, nor did they admit possession of the drugs. However, Low admitted to having recently smoked marijuana.

The officers eventually found the key near the vehicle itself. They proceeded to search the truck. Van Egmond found several containers containing methamphetamine in the back seat of the vehicle near where Watson was seated.

## II.     RELEVANT LAW AND DISCUSSION

### A. Initial Detention of Vehicle

The Fourth Amendment protects individuals from unreasonable searches and seizures. Traffic stops are considered seizures within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Because traffic stops are considered more similar to investigative detentions than formal arrests, the legality of traffic stops for Fourth Amendment purposes is analyzed under the standard articulated in *Terry v. Ohio,* 392 U.S. 1 (1968). *Terry* requires that courts apply a two-step "reasonable suspicion" inquiry to:

1. determine whether the officer's action was justified at its inception, and

2. determine whether the search or seizure was reasonably related in scope to the circumstances that justified the stop in the first place.

*United States v. Zamora*, 661 F.3d 200, 204 (5th Cir. 2011).  The government bears the burden of establishing the two elements under *Terry* by a preponderance of the evidence. *United States v. McMahan*, No. 3:07-CR-152, 2007 WL 2470999, at *4 (N. D. Tex. Aug. 30, 2007) (citing *United States v. Sanchez-Pena*, 336 F.3d 431, 437 (5th Cir. 2003)).

In *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005), the Fifth Circuit succinctly explained the first prong of *Terry*:

> For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle. *See United States v. Breeland*, 53 F.3d 100, 102 (5th Cir. 1995). The Supreme Court has stated that in making a reasonable suspicion inquiry, a court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273.  We have stated previously that reasonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search

and seizure. *See, e.g., United States v. Santiago*, 310 F.3d 336, 340 (5th Cir. 2002). In evaluating the totality of the circumstances, a court may not consider the relevant factors in isolation from each other. *Arvizu*, 534 U.S. at 274. In scrutinizing the officer's basis for suspecting wrongdoing, it is clear that the officer's mere hunch will not suffice. *Terry*, 392 U.S. at 27. It is also clear, however, that reasonable suspicion need not rise to the level of probable cause. *Arvizu*, 534 U.S. at 274.

The Fifth Circuit has held that even a minor violation can justify a traffic stop. *See, e.g. Zamora*, 661 F.3d at 204 (holding that a missing front license plate and cancelled rear license plate provides police with reasonable suspicion) *United States v. Summers*, 108 F. App'x 192, 193 (5th Cir. 2004) (holding that the district court did not err in holding a traffic stop was justified by believing the testimony of the arresting officer who stopped the vehicle because of the driver's failure to signal before turning).

Therefore, the court must determine whether, objectively, Van Egmond had a reasonable suspicion that some sort of illegal activity–in this instance a violation of a Texas traffic regulation–occurred or was about to occur, before stopping Baker's vehicle. *See United States v. Coronado*, 480 F. Supp. 2d 923, 927 (W.D. Tex. 2007) (citing *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005)).

Van Egmond testified that he had previously inspected the registration of the vehicle and observed that it expired in January of 2018. Van Egmond knew this to be a violation of Texas state Transportation Code. The relevant section, 402.407(b) states:

> (a) A person commits an offense if, after the fifth working day after the date the registration for the vehicle expires:
> (1) the person operates on a public highway during a registration period a motor vehicle, trailer, or semitrailer that has attached to it a license plate for the preceding period; and
> (2) the license plate has not been validated by the attachment of a registration insignia for the registration period in effect

A week prior to the stop, Van Egmond observed the truck's expired registration. Prior to conducting a traffic stop of the vehicle, Van Egmond also confirmed with dispatch that the registration had expired. After receiving this confirmation, Van Egmond stopped the vehicle. While Van Egmond did not directly observe the registration at the exact time of the detention, the law does not require him to do so. Van Egmond possessed reasonable suspicion upon confirming with dispatch that the vehicle was in fact in violation of the law for failing to maintain proper registration and could temporarily detain the vehicle based on this traffic infraction. *Summers*, 108 F. App'x 192, 193 (5th Cir. 2004)

Baker contends that Deputy Van Egmond did not have the authority to stop his vehicle because the vehicle was detained in the city limits of Grapeland and Deputy Van Egmond is not a Grapeland City Police Officer. Baker is incorrect. While Texas law does not authorize a peace officer to make warrantless arrests anywhere within the state, *State v. Kurtz*, 152 S.W.3d 72 (Tex. Crim. App. 2004) and officers are limited to "offenses within the officer's presence or view, if the offense is a felony, . . . or a breach of the peace . .." TEX. CODE CRIM. PROC ANN. ART 14.03(d), a deputy sheriff's jurisdiction is countywide. Art. 2 .17 V.A.C.C.P. Additionally, a deputy sheriff's jurisdiction is not limited to the areas of county that are not incorporated. *See Armendariz v. State*, 123 S.W.3d 401 (Tex. Crim. App. 2003) (upholding the validity of a seizure by Odessa Police Officer based upon observations of a Sheriff's Deputy inside the city limits of Odessa). Based on the expired registration, Van Egmond had the requisite reasonable suspicion and legal authority to briefly detain the vehicle.

B. **Probable Cause to Search the Vehicle**

Although Van Egmond was authorized to briefly detain Baker's vehicle, upon activating his lights and sirens, Baker's vehicle did not come to an immediate stop. After a short pursuit, the vehicle eventually parked, and Baker proceeded to flee on foot. As the traffic stop at this point had effectively ended, the second prong of *Terry* is not at issue.[2] The remaining issue is whether Van Egmond possessed probable cause to search the vehicle. Under the automobile exception to the warrant requirement, a police officer may search a vehicle and its contents if he possesses probable cause that instrumentalities of the crime may be present. *Carroll v. U.S.* 267 U.S. 132, 154 (1925). Determining probable cause is based on the "totality of the circumstances" *Illinois v. Gates*, 462 U.S. 213, 230 (1983). Further, evidence in "plain view" may be seized when (1) law enforcement officials are in a lawful vantage point and (2) the "incriminating character of the object in plain view must be 'immediately apparent.'" *Horton v. California*, 496 U.S. 128, 136 (1990).

Based on the totality of the circumstances, including Baker's flight from Van Egmond both in the vehicle and on foot, Low's outstanding warrant, Low's admission of recent drug use and Baker discarding the eyeglasses case containing contraband, Van Egmond possessed probable cause to search the vehicle.

---

[2] Under the second prong of the *Terry* test, the relevant question is whether the officer's actions, after he legitimately stopped Baker's vehicle, were *reasonably related* to the circumstances that justified the stop. *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004) (emphasis added). Generally, the "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. . . ." *Id.* In the course of effectuating the stop, a police officer may permissibly examine the driver's license and registration and run a computer check on the occupants to investigate whether the driver has any outstanding warrants or if the vehicle is stolen. *Id.* at 507–08. An officer may also ask the driver about the purpose and itinerary of his trip. *Id.* at 508. Here, the vehicle was already stopped, and Baker had fled on foot. There was no prolonged detention, because Van Egmond arrested Baker after a foot chase in which he appeared to discard methamphetamine.

Although Baker was arrested after flight, the vehicle was not searched until Van Egmond had recovered drugs allegedly discarded by Baker in the wheel well of a nearby vehicle. The eyeglasses case obtained from the wheel well was in plain view, and upon opening it, Van Egmond believed the substance contained inside was methamphetamine.

Police officers may search an automobile without a warrant if they have probable cause to believe that contraband or evidence of a suspected crime is hidden inside. *United States v. Ross* 456 U.S. 798 (1982). An odor a trained officer knows to be consistent with drugs is sufficient on its own to justify a search of an automobile in the traffic stop context. *United States. v. Martinez*, 808 F.2d 1050 (5th Cir. 1987). Here, Van Egmond recovered drug paraphernalia and a substance he believed to be methamphetamine that were recently in the vehicle. Thus, Van Egmond did not just have the "odor" of narcotics emanating from the vehicle. Rather, he had actual narcotics themselves that were recently relinquished from the vehicle. *See United States v. Reno*, 196 F.Supp.2d 1150 (D. Kan. 2002) (holding that it is reasonable to infer drugs are located in a vehicle when an officer observes defendant discard items commonly used in the manufacture of methamphetamine from the same vehicle.) Van Egmond possessed more than probable cause that there may be more drugs in the vehicle, and therefore the search of the vehicle was lawful.[3]

### III. RECOMMENDATION

The undersigned finds that there was reasonable suspicion to stop Baker's vehicle, and the following detention, and search of the vehicle was lawful. Consequently, it is recommended that the district court deny the Defendant's Motion to Suppress Evidence. [Dkt. #27].

---

[3] At the hearing on the motion to suppress, Baker focused his arguments on the above issues. However, the written motion to suppress is much broader. [Dkt. #27]. To the extent Baker feels the undersigned did not address an argument raised in the written motion, he should file objections to this Report and Recommendation.

## IV.  OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) (Supp. IV 2011), each party to this action has the right to file objections to this report and recommendation. Objections to this report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed within fourteen (14) days after being served with a copy of this report, and (4) no more than eight (8) pages in length. *See* 28 U.S.C. § 636(b)(1)(c); F̲ED R. C̲IV. P. 72(b)(2); Local Rule CV-72(c). A party who objects to this report is entitled to a *de novo* determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made. *See* 28 U.S.C. § 636(b)(1)(c); F̲ED R. C̲IV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to de novo review by the United States District Judge of the findings of fact and conclusions of law, (*see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988)), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States District Judge. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SIGNED this 26th day of November, 2019.

_____
Zack Hawthorn
United States Magistrate Judge